The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The defendant-employer is subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the plaintiff and the defendant-employer at the time of the alleged injury.
3. The defendant-carrier was the workers' compensation insurance carrier on the risk.
4. The plaintiff's average weekly wage was $234.00.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. The plaintiff is forty-nine years old. She has a GED and has taken classes in Typing and Business Office I at a community college.
2. The plaintiff began working for the defendant-employer in November 1989 and was transferred to the "cabinet room" around October 1992. In the cabinet room, her job duties included lifting pieces of furniture off of a truck onto a table, putting hardware on the furniture, and then returning the furniture to the truck.
3. The plaintiff alleges that on 4 November 1992 she was lifting a piece of furniture to put it on a truck when she felt a pain in her back that felt like her back "tore apart." She said that she told Kevin Holder, an employee who was nearby, who told her to report the incident to Charles McLean, the plant supervisor. She further testified that she met with Mr. McLean in his office the following day and told him what had happened and that she could not do the heavy lifting required in the cabinet room anymore. The plaintiff further testified that she told Phyllis Love, the plant nurse, how she had hurt her back, that Ms. Love gave her a form to be completed by the plaintiff and her doctor, and that Ms. Love told her that "it would be taken care of" and that that was the only form plaintiff needed to complete. The testimony of the other witnesses at the hearing conflicted with the plaintiff's testimony.
4. Charles E. McLean, Jr., the general manager at the defendant-employer since October 1992, testified at the hearing. The undersigned finds his testimony credible and factual. He testified that when he met with the plaintiff in his office on 5 November 1992, she complained that she was not happy with her recent transfer to the cabinet room because the work there was too heavy. She told him that she had problems, including shoulder problems, that made the work uncomfortable to her and that if she could not be reassigned, she would quit. Mr. McLean then summoned Ron Spivey, the personnel director for the defendant-employer, to the conference to discuss the possibility of transferring the plaintiff to a less difficult job. At no time did the plaintiff tell either of them about any back problem or back injury at work. Mr. Spivey's testimony was consistent with Mr. McLean's.
5. Phyllis Love testified at the hearing concerning notice received by the defendant-employer of the plaintiff's alleged injury. The undersigned finds her testimony credible and factual. Ms. Love is a registered nurse who works for the defendant completing insurance and workers' compensation claim forms and providing nursing services to plant employees. She testified that no one reported to her that the plaintiff had an accident on 4 November 1992 and that she did not see the plaintiff that day. She referred to the plaintiff's Employee Health Record, which was received into evidence, in which Ms. Love routinely documents any health problems reported to her. The log contained no entry of any kind for the plaintiff for 4 November 1994. The record did reflect, and Ms. Love testified, that on 23 November 1992, as Ms. Love was walking around the plant, the plaintiff pulled her aside and said that she had been having pain in her abdomen going up into her right chest and into her back. The plaintiff said nothing to Ms. Love about a back injury at work; if she had, Ms. Love would have sent the plaintiff to the "company doctor."
6. The plaintiff worked nine hours on 4 November 1992, and the next day, 5 November 1992, she was reassigned to a job with the defendant-employer that did not require as much lifting; she worked eight hours that day. She continued to work for the defendant-employer until 12 December 1992.
7. On 6 November 1992, the plaintiff saw Dr. Mutton, her gynecologist. Dr. Mutton's notes indicate that at that time the plaintiff was experiencing continued pain in her breast and right shoulder. There is no reference in the notes to a back injury.
8. The plaintiff was seen at Northern Hospital of Surry County Emergency Room on 27 November 1992 complaining of sharp shooting pains under her ribcage area radiating into her back and right scapula area for approximately one week with pains radiating into right abdomen since the day before. The plaintiff also complained of nausea.
9. On 4 December 1992, the plaintiff was again seen by Dr. Mutton complaining of right sided abdominal pain for the past week radiating into her back. There is no reference in the notes to a back injury or any pain relating to the plaintiff's work.
10. On 6 December 1992, the plaintiff was seen at Forsyth Memorial Hospital Emergency Room complaining of pain in the right side of her abdomen radiating to her right buttocks for two weeks. She was referred by the emergency room to Dr. David Wood, a gastroenterologist. On 8 December 1992, Dr. Wood admitted the plaintiff to Forsyth Memorial Hospital for lower abdominal and right sided pain of uncertain etiology and tenderness in the left adnexae, probable left ovarian cyst. She was diagnosed with a left ovarian cyst.
11. Dr. John Ritchie, an orthopedic surgeon, was called for a consultation on 11 December 1992 regarding the plaintiff's right hip pain. At that time, the plaintiff complained of right hip and buttock pain that she thought began about four weeks prior when she was lifting some doors at work. Dr. Ritchie could not diagnose her pain, but thought the majority of her pain may be due to gluteal myofascitis. She was injected with Marcaine and Celestone. She was discharged on 12 December 1992.
12. Dr. Ritchie saw the plaintiff in his office on 15 December 1992. The plaintiff reported that her pain originally started when she was lifting heavy doors had work. Dr. Ritchie indicated in his note that he was treating her for right buttock pain of undetermined etiology.
13. On that same day, 15 December 1992, the plaintiff, Dr. Ritchie and Ms. Love each completed portions of a form entitled Statement of Claim for Accident and Sickness Weekly Benefits. The plaintiff wrote on the form that she "started hurting about the 1st week of November 1992 doing heavy lifting on job in cabinet room." Dr. Ritchie indicated on the form that the plaintiff was suffering from right low back and hip pain that did not arise out of the plaintiff's employment. Ms. Love was aware that the plaintiff was having health problems and had been treating with several doctors, including a gastroenterologist, and so after seeing Dr. Ritchie's statement, she told the plaintiff that she would take care of it and turn it over to the defendant-employer's group insurance carrier. Ms. Love testified that she did not discuss workers' compensation with the plaintiff at that time.
14. The plaintiff was out of work from 12 December 1992 until 22 February 1993. During that time, she continued to receive conservative treatment from Dr. Ritchie, including physical therapy for her right low back, buttock, hip and leg pain. The plaintiff continued to work for the plaintiff until December 1994.
15. The plaintiff continued to receive conservative treatment for back problems, and on 5 December 1994, Dr. T. Craig Derian, an orthopedic surgeon, diagnosed the plaintiff with lumbar degenerative disc disease L4-5 with low back and right lower extremity symptoms.
16. On 22 December 1994, the plaintiff submitted another Statement of Claim for Accident and Sickness Weekly Benefits. This time, Dr. Ritchie indicated that the plaintiff's did arise out of her employment two years ago.
17. On 3 January 1995, the plaintiff called Ms. Love and told her that she was wondering if her back problems could be turned over workers' compensation, indicating that she had hurt her back in the cabinet room in November 1992. The plaintiff told Ms. Love that she had reported it to her in the plant one day. Ms. Love responded that she had not and that this was the first time Ms. Love became aware that the plaintiff was alleging she was injured at work. The plaintiff did not argue or voice displeasure with Ms. Love. This conversation is documented in the Employee Health Record. Ms. Love and the plaintiff had three subsequent conversations, but workers' compensation was never discussed after that 3 January 1995 discussion.
18. On 14 March 1995, the plaintiff received surgery for L4-5 decompression stabilization and fusion with left iliac crest bone graft. The plaintiff has not worked since December 1994.
19. The plaintiff filed her claim with the Industrial Commission on a Form 18 on 19 January 1995. The plaintiff did not file a claim with the Industrial Commission within two years of the date of her alleged injury, a necessary predicate to jurisdiction.
20. Because of the consistency of the testimony of Mr. McLean, Mr. Spivey and Ms. Love, along with their demeanor and the documentary evidence in support of their testimony, the undersigned gives more weight to their testimony than to that of the plaintiff. The plaintiff has failed to establish that her claim was not timely filed due to any misrepresentations made by the defendants or that any actions of the defendants "lulled her into a false sense of security" regarding the compensability of her back problem under workers' compensation. Therefore, the plaintiff has failed to establish by the greater weight of the evidence that the defendants should be estopped from pleading a statutory bar to the plaintiff's claim pursuant to N.C. Gen. Stat. § 97-24.
* * * * * * * * * * *
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Proper filing of a claim within two years after an accident is a condition precedent to jurisdiction by the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-24(a).
2. Since the plaintiff did not file a claim with the North Carolina Industrial Commission within the two year period prescribed by N.C. Gen. Stat. § 97-24, the Industrial Commission has no jurisdiction over this matter and the plaintiff's claim for compensation under the North Carolina Workers' Compensation Act is barred. N.C. Gen. Stat. § 97-24.
3. The defendants are not estopped to rely on N.C. Gen. Stat. § 97-24 in bar of the plaintiff's claim. N.C. Gen. Stat. § 97-24; Craver v. Dixie Furniture Co., 115 N.C. App. 570 (1994).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. This claim is hereby DISMISSED for lack of jurisdiction.
2. Each side shall pay its own costs.
 S/ ____________ MARY MOORE HOAG DEPUTY COMMISSIONER
CONCURRING:
S/ _______________ BERNADINE BALLANCE COMMISSIONER
S/ ____________ THOMAS J. BOLCH COMMISSIONER
MMH:db